SHOOTING POINT, L.L.C., et al., Plaintiffs,

v.

W.M. CUMMING, Jr., John W. Wescoat, Suzanne Wescoat, John W. Wescoat, Jr., and Curtis H. Jones, Jr., Defendants.

No. 2:02CV193.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 20, 2002.

---

730

Andrew M. Sacks, Esquire, Sacks & Sacks, Norfolk, VA, for Plaintiff.

James C. Stuchell, Assistant Attorney General, Richmond, VA, for Defendant W.M. Cumming, Jr.

James A. Cales, III, Esquire, Furniss, Davis, Rashkind & Saunders, Norfolk, VA, for Wescoat Defendants and Defendant Jones.

## MEMORANDUM OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiffs, Shooting Point L.L.C., Lemoin B. Cree, Marlene Cree, Nicole Killebrew, Montaigne Cree, L. Barrett Cree, and Shooting Point Property Owners Association, Inc. bring this action against defendants, W.M. Cumming, Jr., John W. Wescoat, Suzanne Wescoat, John W. Wescoat, Jr., and Curtis H. Jones, Jr., alleging violations of federal and constitutional rights, pursuant to 42 U.S.C. §§ 1983 and 1985 and various state law claims. This matter is currently before the court on the motion by defendants to dismiss the action, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Additionally before the court is defendant W.M. Cumming's motion for judgment on the pleadings pursuant to Rule 12(c).

## I. FACTUAL AND PROCEDURAL HISTORY

This case involves a private property dispute in Northampton County, on the Eastern Shore of Virginia, between adjoining landowners with different visions for the development of the land. Plaintiffs are individuals and entities that own a parcel of land, comprising roughly 176 acres, known as Shooting Point.[1] The Shooting Point property is surrounded by a 900 acre tract of land owned by defendants John and Suzanne Wescoat (the "Wescoat property"). The Wescoat property is subject to a fifteen-foot wide easement benefitting the Shooting Point property for the purpose of ingress and egress to state highway Route 622. The easement, granted by deed in 1974, is a non-exclusive easement to be used by both the servient and dominant estates.

On December 29, 1999, plaintiff Shooting Point, L.L.C. recorded a plat, approved by Northampton County, which divided Shooting Point into eighteen separate parcels for sale to private property owners. Many of the lots have already been sold or placed under contract. According to the complaint, the Wescoats, unhappy with the plaintiffs' plans for the property, are attempting to restrict access to the easement, hoping to cause plaintiffs to abandon

the property and sell it to the Wescoats at a depressed price. (Compl.¶¶ 72–76).

In January of 2000, the Wescoats contacted defendant W.M. Cumming ("Cumming"), the local Resident Engineer for the Virginia Department of Transportation ("VDOT"), as to whether VDOT could revoke the plat. Upon learning revocation was not feasible, Suzanne Wescoat telephoned Cumming personally, asking for his assistance in enforcing the VDOT commercial entrance regulations against the plaintiffs. (Compl.¶ 87).[2] According to plaintiffs, however, Northampton County officials had a longstanding policy of not requiring these permits for existing private roads serving subdivisions. (Compl.¶ 79). Plaintiffs allege that there are hundreds of similarly situated existing state road entrances to private roads serving subdivisions that were not required to obtain a permit. (Compl.¶¶ 79–81).

On January 13, 2000, John Wescoat and John Wescoat, Jr., sent a letter to current owners of land in Shooting Point, as well as prospective landowners allegedly containing knowing misrepresentations, exaggerations and threats of legal action designed to interfere with plaintiffs' ability to sell parcels of land. (Compl.¶ 87). The following day, Cumming asked one of his employees, K.M. Wright, to write a letter to Sandra Benson, Director of Planning

---

1. Plaintiff Shooting Point, L.L.C. is a Virginia corporation. Plaintiffs Lemoin B. Cree, Marlene Cree, Nicole Killebrew, Montaigne Cree, and L. Barrett Cree are suing in their individual capacities as Shooting Point L.L.C.'s shareholders. Plaintiffs Lemoin B. Cree and L. Barrett Cree are contract owners of real property lots falling within the scope of the Shooting Point property. Plaintiff Shooting Point Property Owners Association, Inc., is a Virginia corporation comprised of Shooting Point property owners. (Compl.¶¶ 27–30).

2. Under the Virginia Code, a state road entrance to a private road serving a subdivision

is deemed a "commercial entrance" which must be maintained according to the regulations promulgated in the Virginia Administrative Code. *See* Va.Code Ann. § 33.1–198. The Administrative Code provides that any such entrance requires a permit from the Commonwealth Transportation Commission. 24 V.A.C. 30–71–20. In order to qualify for a permit, the entrance must meet certain requirements. 24 V.A.C. 30–71–160. The required width of any such entrance must be a minimum of thirty feet at a line extended across the roadway and be twenty-five feet from the pavement or at the right-of-way line.

and Zoning for Northampton County, advising her that VDOT would require Shooting Point to obtain an entrance permit. According to plaintiffs, Cumming also provided knowingly erroneous information to VDOT headquarters in order to discredit Lemoin B. Cree. *Id.*

On February 16, 2000, the Wescoats filed suit in the Circuit Court of Northampton County, seeking to enjoin plaintiffs' proposed use of Shooting Point. They argued that converting Shooting Point into a subdivision was not a reasonable use of the parcel; that the proposed use of Shooting Point would overburden the fifteen foot wide easement; and that such use of the easement required Shooting Point to obtain a commercial entrance permit, pursuant to Virginia law. (Wescoats' Bill of Complaint, Feb. 16, 2000, Circuit Court of Northampton County, attached as Exhibit A to Motion to Dismiss).

On March 23, 2000, Cumming testified at a hearing in the case that he would require plaintiffs to apply for an entrance permit, even though he had not made a study of the property. Cumming also testified that he normally reviewed plats with private roads connected to state roads but, according to plaintiffs, he had previously informed VDOT that VDOT had no jurisdiction over private roads. *Id.*

After the hearing, but before the state judge visited the site, defendant Curtis Jones destroyed the vegetation and shrubbery in the state right-of-way on each side of Route 622 near its connection with the Shooting Point easement. His alleged goal was to mislead the court into believing that the public road was larger than it actually was. *Id.*

In the midst of the proceedings, plaintiffs applied for a commercial entrance permit from Cumming. Plaintiffs contend that Cumming resisted issuing the permit, in bad faith, as long as he could. On August 14, 2000, Cumming issued plaintiffs a permit for Shooting Point. Subsequently, the Wescoats filed a second action, seeking a declaratory judgment that the permit was unlawfully issued because the regulation requirements were not met. (Wescoats' Bill for Declaratory Judgment, Circuit Court for Northampton County, attached as Exhibit B to Motion to Dismiss).

The two suits were consolidated for trial. The court (1) determined that the easement existed; (2) established the specific location of the easement; (3) held that the use of Shooting Point as a subdivision would not overburden the easement; (4) determined that the commercial entrance permit regulation applied to the Shooting Point Subdivision; and (5) ruled that the permit issued to the plaintiffs by Cumming was invalid as a matter of law because the road did not meet the statutory requirements for an entrance permit. Both parties have appealed to the Supreme Court of Virginia.[3]

Despite the pending appeal, on March 25, 2002, plaintiffs filed the instant action in federal court, pursuant to 42 U.S.C. §§ 1983 and 1985, for alleged violations of rights guaranteed by the Fifth and Fourteenth Amendments. Count One alleges that all defendants participated in a conspiracy to deprive the plaintiffs of their federal civil and constitutional rights. Counts Two through Five allege that defendant Cumming, in his individual capacity, deprived the plaintiffs of their rights to equal protection under the Fourteenth

---

**3.** *Shooting Point, L.L.C., et al., v. John W. Wescoat,* Record Number 020801, appeal granted Aug. 1, 2002; *John Wescoat v. Shoot-* *ing Point, L.L.C., et al.,* Record Number 020803, appeal granted Aug. 1, 2002. The state appellate process remains ongoing.

Amendment, to just compensation under the Fifth Amendment, and to procedural and substantive due process under the Fourteenth Amendment. Count Six comprises various supplemental state law claims arising out of the same incidents.

■ On July 29, 2002, defendant Cumming filed an answer, which contained an affirmative defense of failure to state a claim. On the same day, the other defendants, filed a motion to dismiss. On August 12, 2002, defendant Cumming responded to the other defendants' motion to dismiss, joining their arguments. On October 4, 2002, defendant Cumming filed a motion for judgment on the pleadings. Plaintiffs have replied to these motions and the defendants have submitted rebuttals.[4] Because the issues have been extensively, and exhaustively, briefed by all the parties, the court has determined that a hearing is unnecessary. The matter is therefore ripe for review.

**II. STANDARD OF REVIEW**

■ There are "two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982); Fed.R.Civ.P. 12(b)(1). The attack to jurisdiction may be based upon a facial deficiency in the pleadings, or on facts that exist separately from the pleadings. The burden of establishing jurisdiction rests with the plaintiff. *Id.*

A motion to dismiss, pursuant to Rule 12(b)(6), should not be granted unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1995). The standard governing Rule 12(b)(6) dismissal motions requires that a court reviewing such a motion accept the complaint's factual allegations as true and view the allegations in a light most favor-

---

**4.** In plaintiffs' reply to defendants' motion, they contend that Cumming cannot challenge the sufficiency of the complaint because he submitted an answer before the motion to dismiss was filed, and thus waived all Rule 12(b)(6) defenses. This precipitated a flurry of alternative pleadings by both sides. Cumming submitted a motion for judgment on the pleadings, pursuant to Rule 12(c), which the plaintiffs opposed. Plaintiffs then submitted a motion asking the court to convert Cumming's motion into a motion for summary judgment and delay ruling until after discovery was completed.

Cumming has not waived his ability to submit a Rule 12(b)(6) motion for a number of reasons. First, the defenses enumerated in Rule 12(b) may be made simultaneously with a responsive pleading. Wright and Miller, 5A Federal Practice and Procedure § 1347 (1990). In this case, Cumming included in his answer the affirmative defense of failure to state a cause of action upon which relief can be granted. Second, even if Cumming's answer precluded him from joining in the other defendants' motion to dismiss, the motion for judgment on the pleadings under

Rule 12(c) is a perfectly appropriate means to challenge the sufficiency of the plaintiffs' complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (case on point procedurally with the case at bar). Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted, as set forth in Rule 12(b)(6), may be raised "by motion for judgment on the pleadings, or at the trial on the merits." Therefore, as a practical matter, it is irrelevant whether the court considers Cumming's motion as one brought under Rules 12(b)(6) or 12(c) because the standard of review is identical. *See Edwards*, 178 F.3d at 243. Next, the court is not considering matters outside the pleadings which would not otherwise be considered in deciding the motion to dismiss under Rule 12(b). *See infra* § II. Finally, to the extent that the Rule 12(c) motion is considered one for summary judgment under Rule 56(b), a summary judgment motion can be filed "at any time" in the proceeding and granted as a matter of law based upon undisputed facts. There is no requirement to wait until the conclusion of discovery to decide a summary judgment motion.

able to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001).

▪ As a general rule, in the context of a motion to dismiss under Rule 12(b), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir.1985). However, the court may consider dispositive documents that are either attached to, or referenced in, the complaint. *Moore v. Flagstar Bank, et al.*, 6 F.Supp.2d 496 (E.D.Va.1997); *see also Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (noting that the public record could be considered on motion to dismiss); *Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995) (explaining that consideration of legislative history did not require conversion to summary judgment), *vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996). Thus, the court can consider the prior state judicial proceedings between the parties, which, in this case, are essential to the determination of whether this suit may go forward.

### III. STATUTE OF LIMITATIONS

▪ No party disputes that the applicable statute of limitations for a civil rights action in Virginia is two years.[5] Federal law, however, governs *when* a claim accrues. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir.1995). A civil rights claim accrues when the plaintiffs knew or should have known of the violations. *Id.* On the pleadings alone, the court cannot clearly determine at what point plaintiffs possessed sufficient facts such that a reasonable inquiry would have revealed that defendants were allegedly violating their federal civil rights.[6] Therefore, defendants' motion to dismiss the complaint on this ground is DENIED.

### IV. ROOKER–FELDMAN DOCTRINE

▪ Defendants contend that the court lacks jurisdiction to entertain plaintiffs' constitutional claims under what is known as the *Rooker–Feldman* doctrine. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Under *Rooker–Feldman*, federal courts are prohibited from exercising jurisdiction over issues actually decided by a state court, as well as those issues that are "inextricably intertwined with the questions ruled upon by a state court." *Feldman*, 460 U.S. at 483, 103 S.Ct. 1303. A federal claim is "inextricably intertwined"

---

5. Federal law does not provide a statute of limitations for section 1983 claims. Instead, courts must apply the forum state's statute of limitations provision for personal injury torts. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Virginia law prescribes a two-year statute of limitations for personal injury torts.

6. It is clear that plaintiffs knew or should have known of the alleged equal protection violation and accompanying alleged conspiracy on March 23, 2000, when defendant Cumming testified at a hearing in the state court

proceeding that he would require plaintiffs to obtain the permit for Shooting Point. (Compl.¶ 87). The statute of limitations on those claims would have expired on March 23, 2002. Because March 23, 2002 fell on a Saturday, the statute of limitations extended until the following Monday, March 25, 2002, the date on which plaintiffs filed the complaint. *See* Fed.R.Civ.P. 6(a). Prior to March 23, 2000, it is not clear from the complaint what plaintiffs knew or should have known in this regard.

with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it. *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202–03 (4th Cir.1997).

■ *Rooker–Feldman* also bars consideration of issues that the party had a reasonable opportunity to raise in the state proceedings, *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194 (4th Cir.2000); *see also Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 (noting that even if a claim is not presented to the state court, or by inference, not ruled upon, a party cannot bring the claim in federal court if it should have been brought in state court). Simply put, plaintiffs who lose in state court cannot simply recast their claims under the guise of constitutional claims that should have been raised in state court; *Rooker–Feldman* proscribes jurisdiction if those claims are inextricably intertwined with the merits of the state court judgment. *Guess v. Board of Medical Examiners*, 967 F.2d 998, 1002–03 (4th Cir.1992).

■ Importantly, *Rooker–Feldman* precludes federal review of lower state court decisions, just as it precludes review of the decisions of the state's highest court. *Jordahl*, 122 F.3d at 199. "[T]he doctrine reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." *Id.*

In their complaint, plaintiffs do not directly challenge or attack the state court judgment. Indeed, the complaint barely mentions the prior state proceedings. Rather, plaintiffs brought this section 1983 lawsuit against the defendants, alleging that they violated the plaintiffs' constitutional rights. Nonetheless, the court must decide whether the issues presented in the federal claims are "inextricably intertwined" with the state court judgment.[7]

## A. *Equal Protection—Selective Enforcement—Count Two*

■ In Count Two of their complaint, plaintiffs argue that Cumming, acting under color of state law, violated the equal protection clause of the Fourteenth Amendment when he required plaintiffs to obtain a commercial entrance permit while ignoring those similarly situated.[8] Plaintiffs attempted to introduce the issue of selective enforcement into the state proceeding, but because the court held that the permit was not validly issued under the state statutory requirements for commercial entrance permits, it specifically withheld any judgment on this issue.[9]

---

7. The court does not consider whether *Rooker–Feldman* would bar consideration of the alleged Fifth Amendment takings clause violation because, as is discussed below, the claim is not ripe for adjudication.

8. *See generally Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (plaintiff must allege and prove a deliberate selective process based upon "impermissible considerations [such] as race, religion, or the desire to prevent the exercise of his constitutional rights" and that others similarly situated were not selected); *see also E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987) ("The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state law into equal protection claims"). Plaintiffs in this case have alleged that Cumming selectively enforced the permit requirement against them in order to inhibit the exercise of their constitutional due process and property rights; there is no allegation of racial or other invidious discrimination.

9. However, the state court did determine that the commercial entrance permit regulation applied to the Shooting Point subdivision. *See supra* § I at 5–6.

Nonetheless, the selective enforcement claim would still be barred in this court by *Rooker–Feldman*, if it is inextricably intertwined with the state court judgment. *See Guess*, 967 F.2d at 1003 (failure of the state tribunal to address presented constitutional claims will not avoid the application of the *Rooker–Feldman* doctrine); *see also Edmonds v. Clarkson*, 996 F.Supp. 541, 550 (E.D.Va.1998) (same). Defendants argue that in order to grant relief to the plaintiffs on this claim, the court would have to pass on the merits of the state court decision; therefore the state and federal claims are inextricably intertwined. This court agrees.

A ruling in favor of the plaintiffs would require the court to find that Cumming unconstitutionally applied the VDOT commercial entrance regulation to Shooting Point. In such a case, the plaintiffs would be excused from obtaining a permit. Such an outcome would render the state court judgment completely ineffectual. The state court specifically held that the plaintiffs were required to obtain a commercial entrance permit for Shooting Point, but that the permit issued by Cumming was invalid because Shooting Point did not meet the statutory requirements. In so doing, the state court impliedly determined that the requirement was constitutional as applied to the plaintiffs. This court cannot now review that decision without violating the *Rooker–Feldman* doctrine. Accordingly, Count Two of the complaint, alleging selective enforcement in violation of the equal protection clause, is DISMISSED.

## B. *Procedural and Substantive Due Process—Counts Three and Four*

 *Rooker–Feldman* also prohibits jurisdiction over the due process claims raised in Counts Three and Four of the complaint. Plaintiffs argue that Cumming, acting under color of law, deprived them of due process of law when he delayed issuance of the commercial entrance permit. To establish a substantive due process violation, plaintiffs must show: (1) that they had a property interest in the permit; (2) that the state deprived them of that interest; and (3) "that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir.1995). In order to claim a violation of procedural due process, plaintiffs must make a similar showing: (1) that they have a property interest in the permit; (2) of which the state deprived them; (3) without due process of law.

 In order to grant relief to plaintiffs for either procedural or substantive due process, the court must first determine that they had a property interest in the commercial entrance permit. To have a property interest in a benefit, a person must have a "legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Sylvia Development Corp.*, 48 F.3d at 826.[10] Thus, in order to grant plaintiffs relief, the court would necessarily have to determine that plaintiffs were *entitled* to the issuance of the permit.

---

**10.** The Fourth Circuit has held that the question of entitlement turns on whether the local agency lacks all discretion to deny issuance of the permit or withhold its approval. Any discretion resting with local officials defeats the claim of entitlement. *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 67– 68 (4th Cir.1992). The court does not need to decide whether plaintiffs had a cognizable property interest in the issuance of the permit, but instead must consider whether the consequences of such a determination would violate *Rooker–Feldman*.

Unquestionably, the prior state court proceedings required the state court to engage in a judicial inquiry into whether the plaintiffs were entitled to the issuance of the permit. The circuit court of Northampton County determined that the issuance of the commercial entrance permit to the plaintiffs was impermissible because the road in question did not meet the statutory requirements. For plaintiffs to prevail, this court would have to rule that the state court's decision was wrong and that the plaintiffs *were entitled* to the permit. To do so would run afoul of *Rooker–Feldman*. Clearly, the plaintiffs' due process claims are "inextricably intertwined" with the state court decision regarding the validity of the permit. Thus, Count Three and Count Four of the plaintiffs' complaint, alleging violations of substantive and procedural due process rights, are **DISMISSED**.

## V. REMAINING CLAIMS

### A. *Section 1985 Conspiracy—Count One*

▮ Plaintiffs attempt to allege that defendants conspired to violate their constitutional rights in violation of 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights. Because plaintiffs do not specify which clause of § 1985 they maintain their action, the court will analyze all possible claims.

Section 1985(1) prohibits interference with federal officials in the performance of their duties. Section 1985(2) has two clauses, the first of which concerns obstruction of justice in federal courts. Because there are no facts regarding federal officers nor federal courts in the instant case, plaintiffs have not alleged facts sufficient to sustain a cause of action under these two clauses.

The second clause of section 1985(2) applies to "conspiracies to obstruct the course of justice in state courts" or, more specifically, joint efforts to prevent equal access to state judicial proceedings. *Kush v. Rutledge*, 460 U.S. 719, 725, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *see also Lewis v. Green*, 629 F.Supp. 546, 550 (D.D.C. 1986). At most, this complaint alleges that defendants filed a lawsuit to "harass" them. Nowhere, however, do plaintiffs allege facts sufficient to support a claim of interference with access to state courts. *See Haddle v. Garrison*, 525 U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) ("The gist of the wrong at which § 1985(2) is directed is ... [the] intimidation or retaliation against witnesses in federal-court proceedings.").

▮ Finally, section 1985(3) prohibits conspiracies to deprive persons of the equal protection of the law. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). This claim is fatally defective in that no allegation has been made that the acts of defendants were motivated by class-based animus. *See United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (suggesting that non-racially motivated discrimination not actionable under § 1985(3)). A properly asserted section 1985(3) conspiracy must necessarily contain allegations of unlawful class-based, discriminatory animus on the part of defendants to deprive a plaintiff of equal protection of the laws. *Simmons v. Poe*, 47 F.3d 1370 (4th Cir.1995). Indeed, there is no allegation of record that any of the plaintiffs are members of a suspect class or that any of the defendants' acts were based on racial animus. Count One is therefore **DISMISSED** in its entirety for failure to state a claim.

### B. *Takings Claim—Count Five*

▮ 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but merely provides a method for vindicating and enforcing rights created by the federal Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). To state a cause of action under section 1983, plaintiffs must show that (1) Cumming acted under color of state law; and (2) his actions deprived plaintiffs of rights created by the Constitution or federal law. Because Cumming was performing duties for the county under authority of state law, the issue remaining in this case is whether the complaint adequately alleges deprivations of constitutional rights.

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the taking of private property without just compensation. In the instant case, defendants contend that plaintiffs' takings claim under the federal Constitution is not ripe for adjudication and must be dismissed because plaintiffs have failed to exhaust the state administrative proceedings.

It is true that section 1983 claims do not require exhaustion of remedies. *Patsy v. Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). They do, however, require finality before becoming judicially reviewable. It is axiomatic that the mere taking of property is not a constitutional violation; no violation occurs until compensation is denied. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Accordingly, a takings claim becomes ripe only after a property owner has availed himself of all available state procedures and has been denied. *Id.*

Virginia provides both a statutory and constitutional mechanism by which a property owner to obtain compensation for an alleged taking. *See* Va. Const. of 1970, art. 1, § 11; Va.Code Ann. § 8.01–184, § 8.01–187. Here, plaintiffs have not pursued state compensation procedures. Accordingly, no case or controversy presently exists, and the court has no subject matter jurisdiction over this claim. Count Five is therefore **DISMISSED**, pursuant to Rule 12(b)(1).

### C. *State Law Claims—Count Six*

Plaintiffs have also asserted various claims under Virginia law, including (1) interference with contract, (2) conspiracy to injure plaintiffs' reputation, trade or business and (3) abuse of process. Under 28 U.S.C. § 1367, in any civil action of which the district court has original jurisdiction, the court shall have supplemental jurisdiction over related claims that form part of the same case.

With the dismissal of plaintiffs' federal claims, however, the basis for federal jurisdiction has been extinguished. The court, in its discretion, declines to exercise continuing supplemental jurisdiction over the state law claims contained in Count 6.[11] Therefore, Count Six is therefore **DIS-**

---

11. In the context of 42 U.S.C. § 1983, the Fourth Circuit has cautioned that federal courts should not intervene in "local land disputes that inevitably and constantly arise among developers, local residents, and municipal officers." *Gardner*, 969 F.2d at 68

MISSED in its entirety without prejudice to pursue these claims in state court.

## VI. QUALIFIED IMMUNITY

Because the court has dismissed plaintiffs' section 1983 claims on alternative grounds, it need not consider the applicability of qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (defense of qualified immunity shields defendants from liability for damages when their actions do not violate clearly established constitutional rights).

## VII. CONCLUSION

For the reasons set forth above, plaintiffs' complaint is DISMISSED in its entirety.

Count One is DISMISSED for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

Counts Two, Three, and Four are barred by the *Rooker–Feldman* doctrine and are thus DISMISSED, pursuant to Rule 12(b)(1).

Count Five is DISMISSED for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

Count Six is DISMISSED without prejudice to pursue these claims in state court.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Final Order to all counsel of record.

IT IS SO ORDERED.

(4th Cir.1992). Section 1983 does not empower federal courts "to sit as a super-planning commission or a zoning board of appeals, and it does not constitutionalize every run of the mill dispute between a developer and a town planning agency." *Id.* (quoting *Scott v. Greenville County,* 716 F.2d 1409, 1419 (4th Cir.1983)). Indeed, allowing every "allegedly arbitrary denial by a town or city of a local license or permit" to be the basis of a section 1983 violation would unnecessarily overburden the federal court system beyond capacity. *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985).