368 F.3d 379
 SHOOTING POINT, L.L.C.; Lemoin B. Cree, in individual capacity as shareholder of Shooting Point, L.L.C.; Marlene Cree, in individual capacity as shareholder of Shooting Point, L.L.C.; Nicole Killebrew, in individual capacity as shareholder of Shooting Point, L.L.C.; Montaigne Cree, in individual capacity both as shareholder of Shooting Point, L.L.C., as well as contract owner of real property lots situated in Shooting Point; L. Barrett Cree, in individual capacity both as shareholder of Shooting Point, L.L.C., as well as contract owner of real property lots situated in Shooting Point; Shooting Point Property Owners Association, Incorporated, Plaintiffs-Appellants,
v.
W.M. CUMMING, Jr., Resident Engineer for the Virginia Department of Transportation for Northampton County, Virginia, in his individual and/or personal capacity only; John W. Wescoat; Suzanne Wescoat; John W. Wescoat, Jr.; Curtis H. Jones, Jr., Defendants-Appellees.
 No. 03-1120.
 United States Court of Appeals, Fourth Circuit.
 Argued: January 22, 2004.
 Decided: May 14, 2004.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: Andrew Michael Sacks, SACKS & SACKS, Norfolk, Virginia, for Appellants. Alan Brody Rashkind, FURNISS, DAVIS, RASHKIND & SAUNDERS, Norfolk, Virginia, for Appellees John W. Wescoat, Suzanne Wescoat, John W. Wescoat, Jr., Curtis H. Jones, Jr. James Christian Stuchell, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee W.M. Cumming, Jr. ON BRIEF: James A. Cales, III, FURNISS, DAVIS, RASHKIND & SAUNDERS, Norfolk, Virginia, for Appellees John W. Wescoat, Suzanne Wescoat, John W. Wescoat, Jr., Curtis H. Jones, Jr.
 Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.
 Affirmed by published opinion. Judge GREGORY wrote the opinion, in which Judge NIEMEYER and Judge WILLIAMS joined.
 OPINION
 GREGORY, Circuit Judge:
 
 I.
 
 1
 Several individuals and entities that owned a parcel of land in the Tidewater area of Virginia brought a civil rights action under 42 U.S.C. § 1983 against the adjoining landowners and the local resident engineer for the Virginia Department of Transportation ("VDOT") alleging violations of their federal civil and constitutional rights and asserting various state law claims. On Defendants' motion to dismiss, the district court dismissed the action and held that, inter alia, the court lacked jurisdiction under the Rooker-Feldman doctrine to entertain the landowner's § 1983 claims. Plaintiffs-Appellants ("Plaintiff(s)" or "Shooting Point") appeal the dismissal on Rooker-Feldman grounds. Because the case is essentially a residential land dispute and the federal issues are inextricably intertwined with those that the state court has already decided, we affirm.
 
 II.
 
 2
 This case arises from a private property dispute in Northampton County, on the Eastern Shore of Virginia, between adjoining landowners with differing plans for the development of the land. Plaintiffs are individuals and entities that own a parcel of land, comprising roughly 176 acres, known as Shooting Point.[1] The Shooting Point property is surrounded by a 900-acre tract of land owned by Defendants John and Suzanne Wescoat (the "Wescoat property"). The Wescoat property is subject to a fifteen-foot-wide easement benefitting the Shooting Point property for the purpose of ingress and egress to state highway Route 622. The easement, granted by deed in 1974, is a non-exclusive easement to be used by both the servient and dominant tenements.
 
 
 3
 On December 29, 1999, Shooting Point recorded a plat, approved by Northampton County, which divided the Shooting Point development into eighteen separate parcels for sale to private property owners. Many of the lots have already been sold or placed under contract. According to Shooting Point's federal complaint, the Wescoats are unhappy with Plaintiffs' plans for the property and are attempting to restrict access to the easement, hoping to cause Plaintiffs to abandon the property and sell it to the Wescoats at a reduced price. They also allege that defendant W.M. Cumming ("Cumming"), the local Resident Engineer for VDOT, conspired with the Wescoats to require Shooting Point to obtain a commercial entrance permit when other similarly situated property owners had not been required to do so, and then deliberately delayed the issuance of the permit to purposefully interfere with the Shooting Point development.
 
 
 4
 After a series of private disputes, on February 16, 2000, the Wescoats filed suit in the Circuit Court of Northampton County, seeking to enjoin Plaintiffs' proposed use of Shooting Point. They argued that converting Shooting Point into a subdivision was not a reasonable use of the parcel; that the proposed use of Shooting Point would overburden the fifteen-foot-wide easement; and that, under Virginia law, such use of the easement required Shooting Point to obtain a commercial entrance permit. Notwithstanding those proceedings, Plaintiffs applied for a commercial entrance permit from Cumming, who they contend resisted issuing the permit, in bad faith, as long as possible. Ultimately, however, on August 14, 2000, Cumming issued Plaintiffs a permit for Shooting Point. Subsequently, the Wescoats filed a second state action, seeking a declaratory judgment that the permit was unlawfully issued because the regulation requirements were not satisfied.
 
 
 5
 The two suits were consolidated for trial. The state court determined: (1) that the easement existed; (2) the specific location of the easement; (3) that the use of Shooting Point as a subdivision would not overburden the easement; (4) that the commercial entrance permit regulation applied to the Shooting Point Subdivision; and (5) that the permit issued to Plaintiffs by Cumming was invalid as a matter of law because the road did not meet the statutory requirements for an entrance permit. Both parties appealed to the Supreme Court of Virginia, which recently affirmed the judgment of the state trial court.[2]
 
 
 6
 Despite the pending appeal, on March 25, 2002, Plaintiffs filed the instant action in federal court, pursuant to 42 U.S.C. §§ 1983 and 1985, for alleged violations of their rights guaranteed by the Fifth and Fourteenth Amendments. Count One alleges that all Defendants participated in a conspiracy to deprive Plaintiffs of their federal civil and constitutional rights. Counts Two through Five allege that defendant Cumming, in his individual capacity, deprived Plaintiffs of their rights to equal protection under the Fourteenth Amendment, to just compensation under the Fifth Amendment, and to procedural and substantive due process under the Fourteenth Amendment. Count Six alleges various supplemental state law claims arising out of the same incidents.
 
 
 7
 Defendants filed timely answers to the Complaint and also filed separate motions to dismiss and for judgment on the pleadings. The district court declined the parties' request for oral argument because the issues had been extensively, and exhaustively, briefed by all parties. On December 20, 2003, the district court issued its Memorandum Opinion and Final Order dismissing Plaintiffs' complaint in its entirety. Shooting Point, LLC v. Cumming, 238 F.Supp.2d 729 (E.D.Va.2002). Count One was dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; Counts Two, Three and Four were dismissed on Rooker-Feldman grounds; Count Five was dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies; and Count Six (the state law claims) was dismissed because the court declined to exercise its supplemental jurisdiction.[3]
 
 
 8
 Before this Court, Plaintiffs appeal the dismissal on Rooker-Feldman grounds only.
 
 III.
 
 9
 The district court held that the Rooker-Feldman doctrine bars Shooting Point's suit, and our review of that ruling is de novo. Safety-Kleen, Inc. v. Wyche, 274 F.3d 846 (4th Cir.2001) (citing Guess v. Bd. of Med. Exam'rs, 967 F.2d 998, 1002 (4th Cir.1992)). The Rooker-Feldman doctrine holds that "lower federal courts generally do not have [subject-matter] jurisdiction to review state-court decisions." Id. at 875 (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir.1997) and citing D.C. Ct. of App. v. Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)). The Rooker-Feldman doctrine precludes federal "review of adjudications of the state's highest court [and] also the decisions of its lower courts." Jordahl v. Democratic Party, 122 F.3d 192, 199 (4th Cir.1997). The Rooker-Feldman bar extends not only to issues actually decided by a state court but also to those that are "inextricably intertwined with questions ruled upon by a state court." Plyler, 129 F.3d at 731 (internal quotation marks omitted). A federal claim is "inextricably intertwined" with a state court decision if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Id. (internal quotation marks omitted).
 
 
 10
 "Under either the `actually decided' or the'inextricably intertwined' prong, the principle is the same: `[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir.2000) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)). Thus, "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual, Rooker-Feldman is implicated." Jordahl, 122 F.3d at 202 (internal punctuation omitted) (quoting Ernst v. Child and Youth Servs., 108 F.3d 486, 491 (3d Cir.1997)). Because federal jurisdiction to review the decisions of state courts "is reserved exclusively to the Supreme Court, it is improper for federal district courts to exercise jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." Ernst, 108 F.3d at 491.
 
 IV.
 
 11
 After considering the appropriate case law, the district court concluded that Shooting Point's complaint was barred by the Rooker-Feldman doctrine because a favorable decision by that court would require federal review of the Virginia court's decision or would produce a result that was at odds with the result reached in the state courts. We agree.
 
 
 12
 Because the ultimate ruling of the Virginia state courts was that Shooting Point was not entitled to a required permit under the then prevailing state law,[4] we cannot grant the requested relief insofar as Shooting Point's selective enforcement claim seeks to absolve them of their state law obligation to obtain a commercial entrance permit from the VDOT on the theory that others similarly situated have not been required to obtain a permit. The Virginia courts have clearly held that Shooting Point was required to obtain a commercial entrance permit and that, under the then prevailing law, Shooting Point was not entitled to that permit. Because the Virginia courts implicitly held that Shooting Point was properly subject to the VDOT regulations, a federal district court finding of selective enforcement in violation of the equal protection clause of the Fourteenth Amendment would clearly contravene the state courts' judgment.[5] The district court, therefore, correctly concluded that the Rooker-Feldman doctrine precludes its exercise of federal jurisdiction over Shooting Point's selective enforcement claim.
 
 V.
 
 13
 The district court also concluded that Rooker-Feldman bars Shooting Point's Procedural and Substantive Due Process claims, asserted in Counts Three and Four of the Complaint. Plaintiffs argue that Defendant Cumming, acting under color of law, deprived them of due process of law when he delayed issuance of the commercial entrance permit. The district court correctly noted that "to establish a substantive due process violation, Plaintiffs must show: (1) that they had a property interest in the permit; (2) that the state deprived them of that interest; and (3) `that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" Shooting Point v. Cumming, 238 F.Supp.2d 729, 738 (E.D.Va.2002) (quoting Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 827 (4th Cir.1995)). Likewise, the district court properly noted that: "In order to claim a violation of procedural due process, Plaintiffs must make a similar showing: (1) that they have a property interest in the permit; (2) of which the state deprived them; (3) without due process of law." Id.
 
 
 14
 Because the court correctly noted that both the procedural and substantive due process claims necessarily depend upon Plaintiffs "legitimate claim of entitlement" to a "property interest", we agree that Rooker-Feldman bars federal review of those claims insofar as the state courts have already decided that "the issuance of the commercial entrance permit to the Plaintiffs was impermissible...." Id. To grant relief to Shooting Point, the district court "would have to rule that the state court's decision was wrong and that the Plaintiffs were entitled to the permit." Id. Even though the actual language and tenor of the district court's opinion might not explicitly declare the state judgment invalid, when the effect of its decision would carry the same import and would clearly render the state court judgment ineffectual, Rooker-Feldman is a bar to federal jurisdiction. Thus, Counts Three and Four were properly dismissed.
 
 VI.
 
 15
 As we have previously stated: "Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of federal courts ... Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes." Sylvia Dev. Corp., 48 F.3d at 828-29 (citation omitted). Shooting Point presents no persuasive or compelling reason for us to disturb or upset this "delicate political balance." See id. In any event, we decline to depart from our settled and appropriately cautious view that "independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." Breckenridge, 211 F.3d at 198. We, therefore, affirm the judgment of the district court.
 
 
 AFFIRMED
 
 
 
 Notes:
 
 
 [1]
 Plaintiff Shooting Point, L.L.C. is a Virginia corporation. Plaintiffs Lemoin B. Cree, Marlene Cree, Nicole Killebrew, Montaigne Cree, and L. Barrett Cree are suing in their individual capacities as Shooting Point L.L.C.'s shareholders. Plaintiffs Lemoin B. Cree and L. Barrett Cree are contract owners of real property lots falling within the scope of the Shooting Point property. Plaintiff Shooting Point Property Owners Association, Inc. is a Virginia corporation comprised of Shooting Point property owners
 
 
 [2]
 Shooting Point, LLC v. Wescoat, No. 02-0801, appeal granted Aug. 1, 2002; Wescoat v. Shooting Point, L.L.C., No. 02-0803, appeal granted Aug. 1, 2002. Though the state appeal was pending during the district court action below, the Virginia Supreme Court recently affirmed. 265 Va. 256, 576 S.E.2d 497 (2003).
 
 
 [3]
 The Defendants filed a motion to alter or amend judgment, which the district court denied. The court did, however, enter a supplemental order clarifying the reasons for its dismissal of Plaintiffs' § 1983 conspiracy claim. The court clarified that it dismissed that claim because the Plaintiffs could not show a deprivation of a federal constitutional right. For this reason, Plaintiffs contend that this decision was also based on the district court's conclusion thatRooker-Feldman precluded its review of the state court's decision that they were not entitled to a permit and thus, they have no federally protected property interest. This issue is therefore absorbed and disposed of by our Rooker-Feldman analysis of the due process and equal protection claims, which follows.
 
 
 [4]
 During oral argument, the parties indicated that, sometime after the state court entered its judgment, the VDOT amended its regulations in a manner that now allows for the issuance of a permit for easements such as Shooting Point's. Consequently, Shooting Point later obtained a valid permit. Because this change was not retroactive, Shooting Point's claim is governed by the VDOT regulations effective when Shooting Point first applied for a permit. It is undisputed that the state courts held that under those regulations, Shooting Point was not entitled to a commercial entrance permit, as a matter of law
 
 
 [5]
 It appears from the record and oral argument that Plaintiffs were aware of this alleged selective enforcement while the state court actions were pending. Thus, the claim could have, and probably should have, been brought thereSee In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir.1996) (Under res judicata principles, the judgment in a prior action bars litigation "not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.") (emphasis added).