PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES DAVIS BURRELL,
            *Plaintiff-Appellant,*

v.

COMMONWEALTH OF VIRGINIA;
DEPARTMENT OF MOTOR VEHICLES;
JAMES E. JUNIUS; ASBURY W.
QUILLIAN; CHRIS JOHNSON, Police
Officer; R. M. ROGERS, Police
Officer; JOHN W. HALL, Police
Sergeant; SUE MATTHEW; CITY OF
RICHMOND POLICE DEPARTMENT;
GOVERNOR OF VIRGINIA, The
Honorable Mark Warner; BIRDIE H.
JAMISON, Judge,
            *Defendants-Appellees,*

and

MUFEED SAID, Commonwealth
Attorney; VAUGHAN JONES,
Commonwealth Attorney,
            *Defendants.*

No. 02-2347

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-02-555-3)

Argued: October 28, 2004

Decided: January 27, 2005

Before LUTTIG, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Motz and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Hillary Jane Collyer, DIMURO, GINSBERG & MOOK, P.C., Alexandria, Virginia, for Appellant. Vicki West Harris, Assistant City Attorney, CITY ATTORNEY'S OFFICE, Richmond, Virginia, for Appellees. **ON BRIEF:** Bernard J. DiMuro, DIMURO, GINSBERG & MOOK, P.C., Alexandria, Virginia, for Appellant. Peter R. Messitt, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for State Appellees.

---

**OPINION**

LUTTIG, Circuit Judge:

Plaintiff-appellant Charles Davis Burrell filed a complaint in federal district court against numerous officials in the City of Richmond and the Commonwealth of Virginia, alleging numerous claims arising out of an automobile accident in which he was involved. He alleged, *inter alia*, that city officials violated his Fifth Amendment right against self-incrimination and his Fourth Amendment right against unlawful seizure by summoning him to appear in court, after he refused to provide evidence of automobile insurance at the scene of the accident. The district court dismissed all of appellant's claims, and Burrell appeals, raising only his claims against the city in which he alleges that his Fourth and Fifth Amendment rights were violated. For the reasons that follow, we affirm.

I.

Appellant was in a traffic accident on February 19, 2002. J.A. 15. The police officer on the scene, Officer Chris Johnson, requested that Burrell produce documentation of automobile liability insurance for his vehicle. *Id*. Burrell followed advice he had previously received from an attorney and refused to answer the question, asserting his

Fifth Amendment right against self-incrimination. *Id.* 15-16. Officer Johnson told Burrell that he would be arrested for obstruction of justice if he continued to assert his Fifth Amendment privilege. *Id.* 15.

Officer Johnson called his supervisor, Sergeant John Hall, to the scene, and Sergeant Hall repeated the warning that Burrell would be arrested if he failed to cooperate by answering the questions. J.A. 16. Burrell continued to assert his Fifth Amendment right. *Id.* As Burrell was taken to the hospital to be treated for injuries sustained in the accident, Officer Johnson served Burrell with a Confirmation of Liability form, which required that he furnish liability insurance information to the Virginia Department of Motor Vehicles within thirty days. He also served Burrell with two summonses for violation of the laws of the Commonwealth of Virginia: one for operating an uninsured motor vehicle without paying an uninsured motorist fee,[1] and one for obstruction of justice. J.A. 63, 66-67.

On March 27, 2002, a Virginia traffic court convicted Burrell of obstructing justice, but dismissed the charge for failure to maintain insurance. J.A. 55, 69. The obstruction of justice charge was dismissed on appeal. *Id.*

Burrell thereafter brought suit in federal district court against numerous city and state defendants, seeking $10,000,000 in damages for his emotional distress, emotional pain, inconvenience, mental anguish, and reputation. He alleged that the defendants had violated his rights under the Fifth Amendment by compelling him to produce evidence of insurance, violated his rights by issuing a citation without probable cause, violated the Due Process Clause and the Commerce Clause, and that they were civilly liable to him under the Racketeer Influenced and Corrupt Organizations Act (RICO). The district court entered an order dismissing all claims for lack of subject matter jurisdiction, having announced in an oral decision that the suit was barred under the *Rooker-Feldman* doctrine. The court also concluded in its

---

[1]Virginia law does not require that drivers maintain liability insurance, but *does* require that anyone who does not have insurance pay an uninsured motor vehicle fee of $500. *See* Virginia Code Ann. § 46.2-706, -707. Failure to either pay the fee or obtain insurance is a Class 3 misdemeanor. § 46.2-707

oral decision that the state defendants were protected by the Eleventh Amendment, that the city defendants were protected by qualified immunity, that Burrell failed to state a claim against any of the defendants, and that his Fifth Amendment right had not been violated. J.A. 58-60. Burrell appealed.

II.

Before reaching the Fourth and Fifth Amendment claims, we must address whether the district court correctly concluded that it lacked jurisdiction over all of Burrell's claims by virtue of the *Rooker-Feldman* doctrine. J.A. 58-60. The district court held that "the arguments that the plaintiff raises in this matter . . . are defenses that he should have raised in state court." J.A. 59. We review the court's dismissal pursuant to the *Rooker-Feldman* doctrine *de novo*. *Shooting Point* v. *Cumming*, 368 F.3d 379, 383 (4th Cir. 2004).

The district court erred in its conclusion that the *Rooker-Feldman* doctrine barred consideration of appellant's claims. That doctrine "precludes federal 'review of adjudications of the state's highest court and also the decisions of its lower courts.'" *Shooting Point*, 368 F.3d at 383 (quoting *Jordahl* v. *Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997)). The federal lower courts are barred not only from reconsidering "issues actually decided by a state court" but also "those that are 'inextricably intertwined with questions ruled upon by a state court.'" *Id.* (quoting *Plyler* v. *Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). Burrell did not ask the court to reconsider any such issue. We have recognized that a "'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Id.* (quoting *Brown & Root, Inc.* v. *Breckenridge*, 211 F.3d 194, 199 (4th Cir. 2000)). Burrell obviously makes no such claim; instead, the state court, in his view, correctly dismissed all charges against him. Therefore, the concern addressed by *Rooker-Feldman* — that lower federal courts will not act as courts of appeals from state courts — is simply not present, and the doctrine does not bar federal court review of Burrell's claims.

III.

Turning to the merits of Burrell's section 1983 claim, Burrell challenges the district court's holding that the defendants enjoyed qualified immunity from his claims that the defendants violated (1) his Fifth Amendment rights by demanding insurance and (2) his Fourth Amendment rights by issuing two summonses without probable cause. We review a district court's denial of qualified immunity *de novo*. *Rogers* v. *Pendleton*, 249 F.3d 279, 285 (4th Cir. 2001).

A.

Whether Burrell's Fifth Amendment claim against the officers is barred by qualified immunity is evaluated through a two-part inquiry. First, this court must consider whether the facts alleged show that the officer's conduct violated a constitutional right; if so, we must consider whether that constitutional right was clearly established. *Saucier* v. *Katz*, 533 U.S. 194, 200-01 (2001). If the challenged conduct did violate a clearly established constitutional right, qualified immunity does not bar the suit. *Id*. at 200, 202. Burrell alleges that his refusal to answer questions regarding his insurance was protected by his Fifth Amendment right against self-incrimination, as incorporated against the state by the Fourteenth Amendment. The district court rejected this claim, and we agree, albeit on different reasoning.

The government relies on *California* v. *Byers*, 402 U.S. 424 (1971), to argue that the district court correctly determined that Burrell had no Fifth Amendment right in this case.[2] In *Byers*, a plurality of the Supreme Court determined that a statute requiring that drivers involved in accidents disclose their names and addresses did not violate the Fifth Amendment, both because the identity-disclosure requirement was insufficiently incriminating to outweigh the policies

---

[2]The district court provided little analysis of the Fifth Amendment claim, but it appears to have based its decision on a similar characteristic to that found determinative in *Byers* — that the requirement that parties produce insurance is part of a regulatory scheme. *See* J.A. 60 ("[T]he plaintiff does not have a fifth amendment right to refuse to say whether a vehicle he is driving is insured. A regulatory scheme may be based on compelling self-reporting.").

in favor of the state's interest in regulating accidents, and because disclosing one's name and address was not testimonial in nature. *Id*. at 427-32.

*Byers* does not control the case *sub judice*. To conclude that the disclosed information was insufficiently incriminating to outweigh the state's interest, the *Byers* Court relied on the fact that "it is not a criminal offense in California law to be a driver 'involved in an accident.'" *Id*. at 430. While not having insurance is not *alone* sufficient to constitute a criminal offense in Virginia, not having insurance *is* a criminal offense if the driver has not paid the uninsured motorist fee. *See* Virginia Code Ann. § 46.2-707. Disclosure that one does not maintain insurance therefore is more closely connected to a criminal offense than was the mere involvement in an accident in *Byers*. *Byers* explicitly left open the question of whether a state may be able to compel further disclosure of information other than name and address. *Byers*, 402 U.S. at 434 n.6 ("We are not called on to decide, but if the dictum of the [*United States* v.] *Sullivan* opinion were followed, the driver having stopped and identified himself, pursuant to the statute, could decline to make any further statement."). *Byers* thus does not resolve the question of whether the Fifth Amendment can be invoked as justification for a refusal to produce insurance information in a criminal case.

We need not decide whether to extend *Byers* here, however, because *Chavez* v. *Martinez*, 538 U.S. 760 (2003), precludes a section 1983 suit in the circumstances of this case, regardless of whether the Fifth Amendment would bar admission in court of insurance information produced under compulsion. The plaintiff in *Chavez* was allegedly coercively interrogated, but was never prosecuted based on that interrogation. *Chavez*, 538 U.S. at 763-64. The Supreme Court held that his section 1983 suit failed to state a claim, at least for a violation of the Fifth Amendment.[3] A four-member plurality of the Court con-

---

[3]The Court left open on remand the question of whether the plaintiff could pursue a claim for a violation of substantive due process. *Chavez*, 538 U.S. at 779-80 (Souter, J.). It is not clear whether Burrell's claim of a due process violation is intended to be a substantive due process violation; regardless, he neither alleges that the police behavior "shocks the conscience" nor that it was "unusually coercive." *See Chavez*, 538 U.S. at 787 (Souter, J.).

cluded that "a violation of the constitutional *right* against self-incrimination occurs *only* if one has been compelled to be a witness against himself in a criminal case." *Chavez*, 538 U.S. at 770 (first emphasis in original; second emphasis added). Justices Souter and Breyer, though not joining the plurality, agreed that "the text of the Fifth Amendment (applied here under the doctrine of Fourteenth Amendment incorporation) focuses on *courtroom use* of a criminal defendant's compelled, self-incriminating testimony, and the core of the guarantee against compelled self-incrimination is the exclusion of such evidence." *Id*. at 777 (Souter, J.) (emphasis added).[4]

The *Chavez* plurality, therefore, refused to allow a section 1983 suit to proceed, on the ground that no constitutional violation had occurred, since the compelled testimony was never admitted in court, noting that "violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Id*. at 772. Justices Souter and Breyer also refused to allow a section 1983 claim under the Fifth Amendment to proceed in *Chavez*. They held that a "powerful showing" was required to adopt a new prophylactic rule in support of the Fifth Amendment, namely the attachment of civil liability to police interrogations; such a rule must be "necessary in aid of the basic guarantee." *Id*. at 778-79 (Souter, J.).

On the reasoning of either the *Chavez* plurality or Justice Souter's concurrence in the judgment, Burrell's Fifth Amendment section 1983 claim fails to state a claim. He does not allege any *trial* action that violated his Fifth Amendment rights; thus, *ipso facto*, his claim fails on the plurality's reasoning. And he has done nothing to make the "powerful showing" of the necessity of a section 1983 suit which Justices Souter and Breyer would require; like the plaintiff in *Chavez*, Burrell has "offered no reason to believe that the guarantee has been ineffective in all or many of those circumstances in which its vindica-

---

[4]Unlike in *Chavez*, criminal charges *were* ultimately brought against Burrell. The record does not disclose whether the prosecution attempted to introduce evidence of Burrell's failure to respond at the trial for obstruction of justice or whether such evidence was in fact admitted. At oral argument, Burrell's counsel affirmed in response to the court's question that Burrell *only* claims that his constitutional rights were violated at the time the summonses were issued, not at the time of trial.

tion has depended on excluding testimonial admissions or barring penalties." *Id.* at 779.

Because Burrell has failed to allege the violation of any constitutional right, qualified immunity attaches to the city officials and the claim is dismissed. Burrell's claim that the city caused the constitutional violation by having a policy permitting its officers to question motorists about their liability insurance and issue them citations if they do not provide the requested information fails necessarily, as we find no constitutional violation.

### B.

Burrell also alleges that the police lacked probable cause to issue him summonses for failure to have insurance and for obstruction of justice. J.A. 18. On appeal, he urges that we treat this claim, which is arguably a malicious prosecution claim, as a Fourth Amendment claim for unlawful seizure; we have held that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert* v. *Williams*, 223 F.3d 257, 261 (4th Cir. 2000). In order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, we have required that the *defendant* have "seized [plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings [have] terminated in [plaintiff's] favor." *Brooks* v. *City of Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996).[5]

The criminal proceeding against Burrell clearly terminated in his favor. Burrell alleges there was also a lack of probable cause to support the prosecution on each of the two charges.[6] "An officer has

---

[5]Although malice is required to state a claim for malicious prosecution at common law, the reasonableness of a seizure under the Fourth Amendment should be analyzed objectively. *Brooks*, 85 F.3d at 184 n.5 (citing *Graham* v. *Connor*, 490 U.S. 386, 396-97 (1989)).

[6]Whether a summons constitutes a seizure for Fourth Amendment purposes is not clear. *See Britton* v. *Maloney*, 196 F.3d 24, 30 (1st Cir.

probable cause for arrest when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilson* v. *Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (internal quotation marks omitted).

As to the charge for not maintaining liability insurance, Burrell argues that the only basis on which the police could have drawn the conclusion that he did not have insurance, and thus that he was committing a crime, was his refusal to produce evidence of insurance. He contends that his refusal to produce evidence of insurance, however, was an impermissible basis upon which to draw the adverse inference that he lacked insurance, because his refusal was protected by the Fifth Amendment. But the authority appellant cites does not support Burrell's contention. That authority merely establishes the impermissibility of drawing negative inferences from a defendant's refusal to testify *at trial*. *See Griffin* v. *California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."). However, because the requirement that Burrell respond did not constitute a violation of the Fifth Amendment itself, *see supra* Part III.A, an adverse inference drawn from the refusal to respond is permissible. *Cf. Chavez*, 538 U.S. at 768-69 ("We have also recognized that governments may penalize public employees and government contractors . . . to induce them to respond to inquiries, so long as the answers elicited (and their fruits) are immunized from use

1999) ("Absent any evidence that [plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment."). However, we need not reach this question, because the officers possessed probable cause to issue the summons. *See Dorman* v. *Castro*, 347 F.3d 409, 411 (2nd Cir. 2003) (refusing to reach the question of whether an issuance of appearance tickets was a seizure when the existence of probable cause was evident).

in any criminal case against the speaker . . . . By contrast, no 'penalty' may ever be imposed on someone who exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'"). Even if a refusal to provide insurance information *in a criminal case* is protected by the Fifth Amendment (a question we do not reach), Burrell's refusal *outside* the context of a criminal trial was not an exercise of his "core Fifth Amendment right."[7] *Id.* Burrell's refusal therefore was properly considered by the officers as evidence that he neither had insurance nor had paid the uninsured motorist fee that would render the failure to have insurance permissible.

Burrell also alleges the government lacked probable cause to issue him a citation for obstructing justice because his actions did not meet the statutory requirements of that offense. He urges that, under Virginia law, "a person must do more than merely render an arrest more difficult or inconvenient than it might otherwise have been — by, for example, speaking to an officer as he works — in order to be criminally liable." *Wilson* v. *Kittoe*, 337 F.3d 392, 399 (4th Cir. 2003) (citing *Ruckman* v. *Commonwealth*, 505 S.E.2d 388, 389 (Va. Ct. App. 1998)). In *Wilson*, however, the arrested party was merely speaking to the officers and requesting to speak to the man whom they were arresting, and was not "attempting to prevent [the officer] from carrying out the arrest." *Id.* at 399-400. In contrast, Burrell was directly attempting to prevent the officer from carrying out his duty under Virginia law, which is to provide, within 24 hours, a written report, including insurance information of the parties, of any accident involving injury. Va. Code Ann. § 46.2-373(A). The officer thus had probable cause to issue him a summons for obstruction of justice.

---

[7]Appellant relies heavily on *Kastigar* v. *United States*, 406 U.S. 441 (1972), for the principle that the Fifth Amendment privilege is available outside the context of criminal proceedings. However, the plurality in *Chavez* makes clear that *Kastigar* only establishes the "evidentiary privilege that protects witnesses from being forced to give incriminating testimony, even in noncriminal cases, unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled." *Chavez*, 538 U.S. at 770-71. This *privilege* acts to preserve the core Fifth Amendment *right*, but is not *itself* a Fifth Amendment right. *Id.* at 771; *see id.* at 772 ("Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself . . . .").

Because the officers had probable cause to issue the summonses on each of the charges, the facts alleged do not establish a violation of the Fourth Amendment's prohibition on unreasonable seizure. Accordingly, as to this claim, the officers are entitled to qualified immunity.

## CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*