**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARRY ALLEN PLYLER, et al.,
Petitioners-Appellees,

v.

MICHAEL W. MOORE, Director, South
Carolina Department of Corrections,
Respondent-Appellant.

No. 96-7689

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
C. Weston Houck, Chief District Judge.
(CA-94-190-2BD)

Argued: January 27, 1997

Decided: October 16, 1997

Before RUSSELL and WILKINS, Circuit Judges, and
OSTEEN, United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Russell and Judge Osteen joined.

_____

**COUNSEL**

**ARGUED:** Kenneth Paul Woodington, Senior Assistant Attorney
General, Columbia, South Carolina, for Appellant. W. Gaston Fairey,
FAIREY, PARISE & MILLS, P.A., Columbia, South Carolina, for
Appellees. **ON BRIEF:** Charles Molony Condon, Attorney General,

Treva Ashworth, Deputy Attorney General, Columbia, South Carolina; Larry C. Batson, General Counsel, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Columbia, South Carolina, for Appellant. Rochelle Romosca McKim, FAIREY, PARISE & MILLS, P.A., Columbia, South Carolina; Elizabeth Alexander, National Prison Project, AMERICAN CIVIL LIBERTIES UNION, Washington, D.C.; Stephen B. Bright, SOUTHERN CENTER FOR HUMAN RIGHTS, Atlanta, Georgia, for Appellees.

_____

**OPINION**

WILKINS, Circuit Judge:

In 1981, the General Assembly of South Carolina provided for a supervised furlough program for prisoners; however, inmates who had committed specified crimes were excluded from participation in the program. See S.C. Code Ann. § 24-13-710 (Law. Co-op. Supp. 1981).[1] Two years later, the General Assembly enacted a statute providing for the mandatory release on supervised furlough of all prison inmates serving sentences of less than life imprisonment six months prior to the expiration of their sentences. See S.C. Code Ann. § 24-13-720 (Law. Co-op. 1989). Although this latter provision referenced § 24-13-710, it did not address specifically whether inmates excluded from participation in the supervised furlough program of § 24-13-710 were also excluded from participation in the mandatory furlough program of § 24-13-720. In 1993, the General Assembly amended § 24-13-720 to incorporate the eligibility criteria contained in § 24-13-710 and to make the program permissive rather than mandatory. See S.C. Code Ann. § 24-13-720 (Law. Co-op. Supp. 1993).

Considering the relationship between the two statutes, the Supreme Court of South Carolina held that the exclusions contained in § 24-13-

_____

[1] The furlough program was amended in 1983 to impose additional restrictions on eligibility for participation. See S.C. Code Ann. § 24-13-710 (Law. Co-op. Supp. 1983). Additionally, subsequent amendments have occurred that are not material to this litigation. For ease of reference, we refer to § 24-13-710 as it existed in 1983. See id.

2

710 did not apply to inmates entitled to mandatory release on furlough under § 24-13-720 as that statute was originally enacted. See Plyler v. Evatt, 438 S.E.2d 244, 246 (S.C. 1993) (holding "that the two statutes refer to two different classes of inmates and that the conditions for participation created by [§ 24-13-710] are not implied in [§ 24-13-720]"). The court reasoned that the amendment of § 24-13-720 was not a clarification of the law, but rather constituted a substantive change. See id. The court also concluded in a footnote that application of the amended version of the statute to inmates who were not within six months of the expiration of their sentences at the time of the 1993 amendment did not offend ex post facto principles. See id. at 245 n.1.

This action subsequently was filed in federal district court by members of the plaintiff class of inmates involved in the state litigation, claiming that application of the 1993 version of§ 24-13-720 to prisoners serving sentences of less than life imprisonment for crimes committed between the 1983 enactment of § 24-13-720 and its amendment in 1993 violated the Ex Post Facto Clause of the United States Constitution.[2] See U.S. Const. art. I, § 10, cl. 1. The district court agreed and accordingly enjoined application of the amended statute to the Inmates. The State[3] now appeals that decision, asserting two alternative arguments. First, the State contends that because this litigation essentially amounts to an appeal of the ex post facto ruling of the Supreme Court of South Carolina in Plyler , we lack subject-matter jurisdiction under the Rooker-Feldman doctrine. Second, the State maintains that application of the amended version of § 24-13-720 to the Inmates does not violate the Ex Post Facto Clause because the furlough program in question is not a part of the Inmates' sentences. For the reasons that follow, we affirm.

_____

**2** We refer to such prisoners collectively as "the Inmates."

**3** This action originally named Parker Evatt, former Commissioner of the South Carolina Department of Corrections. Evatt subsequently was succeeded by Michael W. Moore as Director of the South Carolina Department of Corrections. For ease of reference, we refer to Moore as "the State" throughout this opinion.

I.

The "supervised furlough program" allows "carefully screened and selected inmates who have served the mandatory minimum sentence as required by law ... to be released on furlough" subject to "policies, procedures, guidelines, and cooperative agreement[s]" developed by the Department of Corrections and the Parole and Community Corrections Board. S.C. Code Ann. § 24-13-710 (Law. Co-op. Supp. 1983). The General Assembly later enacted the provision at issue in this case, which provided:

> Unless sentenced to life i[m]prisonment, an inmate under the jurisdiction or control of the Department of Corrections shall, within six months of the expiration of his sentence, be placed with the program provided for in § 24-13-710 and shall be subject to every rule, regulation, and condition of such program. No inmate otherwise eligible under the provisions of this section for placement with the program under § 24-13-710 may be so placed unless he has maintained a clear disciplinary record for at least six months prior to eligibility for placement with such program.

S.C. Code Ann. § 24-13-720 (Law. Co-op. 1989). While § 24-13-710 excludes any inmate who is incarcerated for certain crimes or who has "been committed to the State Department of Corrections with a total sentence of five years or less as the first or second adult commitment for a criminal offense for which the inmate received a sentence of one year or more," S.C. Code Ann. § 24-13-710, these limitations were not expressly incorporated in § 24-13-720.

Although the program is termed a "furlough," inmates released under it agree to conditions identical in all material respects to the conditions imposed on parolees concerning, inter alia, residence, employment, use of illegal drugs, and possession of weapons. Inmates who violate these conditions are subject to revocation proceedings before the Department of Probation, Parole, and Pardon Services. Moreover, inmates who participate in the furlough program report to, and are supervised by, state parole officers.**4**

_____
**4** Indeed, during oral argument the State repeatedly asserted that the supervised furlough program is indistinguishable from parole.

4

In 1993, the General Assembly significantly amended§ 24-13-720. The amended statute provides:

> Unless sentenced to life imprisonment, an inmate under the jurisdiction or control of the Department of Corrections who has not been convicted of a violent crime ... may, within six months of the expiration of his sentence, be placed with the program provided for in Section 24-13-710 and is subject to every rule, regulation, and condition of the program. No inmate otherwise eligible under the provisions of this section for placement with the program may be so placed unless he has qualified under the selection criteria and process authorized by the provisions of Section 24-13-710. He must also have maintained a clear disciplinary record for at least six months prior to eligibility for placement with the program.

S.C. Code Ann. § 24-13-720 (Law. Co-op. Supp. 1993) (emphasis added).[5] Later that year, the Supreme Court of South Carolina issued a decision regarding the scope of § 24-13-720 as it existed prior to the 1993 amendment, holding that the conditions for participation in the furlough program under § 24-13-710 did not apply to inmates entitled to mandatory release on furlough pursuant to § 24-13-720. See Plyler v. Evatt, 438 S.E.2d 244, 246 (S.C. 1993). In other words, the court ruled that all inmates serving sentences of less than life imprisonment, including those unable to satisfy the eligibility criteria for the supervised furlough program of § 24-13-710, were entitled to participate in the mandatory furlough program of § 24-13-720. The court also stated in a footnote that application of the amended version of § 24-13-720 to any inmate who was not within six months of the expiration of his sentence when the 1993 amendment became effective would not violate ex post facto principles. See id. at 245 n.1.

The Inmates subsequently filed this action in federal district court, seeking declaratory and injunctive relief on the basis that application of § 24-13-720 as amended in 1993 to prisoners serving sentences of

_____

[5] The statute was again amended, in a manner not material to this litigation, in 1995. See S.C. Code Ann. § 24-13-720 (Law. Co-op. Supp. 1996).

less than life imprisonment for crimes committed between the enactment of § 24-13-720 in 1983 and its amendment in 1993 would violate the Ex Post Facto Clause of the United States Constitution. The district court concluded that application of the amended version of § 24-13-720 to such prisoners would retroactively increase punishment for their crimes and therefore was ex post facto. See generally Collins v. Youngblood, 497 U.S. 37, 42 (1990) (explaining that a law is ex post facto if, inter alia, it increases the punishment for a crime previously committed). Accordingly, the court ordered injunctive relief in favor of the Inmates. Upon a motion by the State, however, the district court stayed its order pending appeal to this court.

II.

The State first argues that we lack subject-matter jurisdiction to consider the Inmates' ex post facto claim because a ruling in favor of the Inmates would nullify the contrary judgment of the Supreme Court of South Carolina in Plyler, thereby violating the Rooker-Feldman doctrine. See District of Columbia Ct. App. v. Feldman, 460 U.S. 462, 482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923).[6] Under the Rooker-Feldman doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court. See Leonard v. Suthard, 927 F.2d 168, 169-70 (4th Cir. 1991); see also Young v. Murphy, 90 F.3d 1225, 1230 (7th Cir. 1996). The Rooker-Feldman doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are "inextricably intertwined with" questions ruled upon by a state court, as when success on the federal claim depends upon a determination "that the state court wrongly decided the issues before it." Charchenko v. City of Stillwater , 47 F.3d 981, 983 (8th Cir. 1995); see Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is

_____

[6] The State did not raise this argument before the district court. However, questions concerning subject-matter jurisdiction may be raised at any time by either party or sua sponte by this court. See North Carolina v. Ivory, 906 F.2d 999, 1000 n.1 (4th Cir. 1990).

6

difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."). However, the Rooker-Feldman doctrine does not bar review of a ruling of a state court in habeas corpus proceedings. See Jordahl v. Democratic Party, No. 96-2402, 1997 WL 418450, at *6 (4th Cir. July 28, 1997); Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993).

Here, the State contends that the Inmates effectively are seeking review of the decision of the South Carolina Supreme Court that "[t]here is no ex post facto violation in applying [§ 24-13-720 as amended in 1993] to individuals who committed offenses before its effective date." Plyler, 438 S.E.2d at 245 n.1 (emphasis omitted).**7** In response, the Inmates argue that the Supreme Court of South Carolina did not actually decide the ex post facto question because the issue was not directly before the court. Alternatively, the Inmates maintain that this litigation sounds in habeas corpus and that we therefore do not lack subject-matter jurisdiction to consider the merits of their claim.

In order to determine whether the Supreme Court of South Carolina decided the ex post facto issue in Plyler, review of the proceedings in state court is necessary. As the Inmates correctly point out, the primary issue before the court in Plyler concerned the proper construction of § 24-13-720 as it existed prior to the 1993 amendment. Before rendering a decision, however, the court requested supplemental briefing on the question of whether the 1993 amendment to § 24-13-720 rendered the litigation moot. In responding to that question, the State argued in part that "application of the amended version [of § 24-

_____

**7** We note that the Supreme Court of South Carolina did not specify whether its decision rested on an interpretation of the state or federal Ex Post Facto Clause. See U.S. Const. art. I,§ 10, cl. 1; S.C. Const. art. I, § 4. Resolution of this question is immaterial to the outcome of this litigation, however. To the extent the Supreme Court of South Carolina relied on the South Carolina Constitution, the Rooker-Feldman doctrine is not implicated and subject-matter jurisdiction is present because this litigation presents a different question. To the extent the decision in Plyler involved application of the United States Constitution, subject-matter jurisdiction exists notwithstanding the Rooker-Feldman doctrine because, as discussed below, this action sounds in habeas corpus.

13-720] to all inmates would not violate the prohibition against ex post facto laws." Supplemental Brief of Appellants at 10, Plyler v. Evatt, 438 S.E.2d 244 (S.C. 1993) (No. 23928) (emphasis omitted). In reply, the Inmates argued that application to them of § 24-13-720 as amended would violate the Ex Post Facto Clause. In its original opinion, the Supreme Court of South Carolina declined to decide whether application to the Inmates of § 24-13-720 as amended in 1993 would be constitutional. See Plyler v. Evatt, No. 23928, slip op. at 3 n.2 (S.C. Aug. 26, 1993). The State subsequently petitioned for rehearing, asserting that it interpreted the ruling of the court to apply only to those prisoners then entitled to mandatory release on furlough. As to all other inmates, including those serving sentences of less than life imprisonment for crimes committed between 1983 and 1993, the State informed the court that it intended to apply the amended version of § 24-13-720. The State also advised the court that counsel for the Inmates had indicated an intention to file an action challenging the State's proposed application of amended § 24-13-720 as violative of the Ex Post Facto Clause of the United States Constitution. Accordingly, the State requested a decision on the question of whether application of the amended version of § 24-13-720 to inmates serving sentences of less than life imprisonment for crimes committed between 1983 and 1993 would pass constitutional muster. The Supreme Court of South Carolina granted the petition for rehearing, withdrew its original opinion, and substituted a new opinion deciding the ex post facto issue in a footnote.[8] See Plyler, 438 S.E.2d at 245 n.1. Thus, it is clear that the question raised by the Inmates in this federal litigation--whether application of the amended version of § 24-13-720 to individuals sentenced to less than life imprisonment for crimes committed between 1983 and 1993 violates the Ex Post Facto Clause--was litigated before, and decided by, the Supreme Court of South Carolina.

_____

[8] In light of this sequence of events, we are at a loss to explain the repeated assertions by counsel for the State that the Inmates initially raised the ex post facto issue and urged the Supreme Court of South Carolina to decide it. Counsel's statements are particularly baffling in view of the fact that he was an attorney of record in the proceedings before the state court. Of course, it is immaterial to our determination of the jurisdictional question which party prompted the Supreme Court of South Carolina to consider whether application to the Inmates of the amended version of § 24-13-720 violates the Ex Post Facto Clause.

Having determined that the issue of whether application to the Inmates of the 1993 amendment to § 24-13-720 violates the Ex Post Facto Clause was actually decided, it is self-evident that the present litigation essentially amounts to nothing more than an attempt to seek review of that decision by a lower federal court. The ruling sought by the Inmates--that application to them of the 1993 amendment to § 24-13-720 violates the Ex Post Facto Clause--would nullify the contrary holding of the Supreme Court of South Carolina in Plyler to the extent that holding relied on an interpretation of the United States Constitution. Accordingly, the Rooker-Feldman doctrine bars subject-matter jurisdiction unless this action is one for habeas corpus relief.

The Inmates maintain that their request for relief sounds in habeas corpus and that as such it has been exempted by Congress from the ambit of the Rooker-Feldman doctrine. See Jordahl, 1997 WL 418450, at *6. It is well settled that challenges to the fact or length of confinement are properly considered in the context of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973) (holding that a challenge to the length of "actual confinement in prison" must be brought as a habeas corpus action). In Preiser, state prisoners brought actions pursuant to 42 U.S.C.A. § 1983 (West 1994) seeking the restoration of "good time" credits that, if awarded, would have entitled the prisoners to immediate release on parole. See Preiser, 411 U.S. at 477 (describing the program pursuant to which the credits had been awarded). The Court concluded that such an action was one challenging the legality of physical confinement and thus that the only proper avenue for relief was a petition for a writ of habeas corpus. See id. at 487 (concluding that the relief sought by the prisoners "fell squarely within [the] traditional scope of habeas corpus"). Here, the Inmates seek to be released from confinement into a program that is virtually indistinguishable from parole. Thus, although the Inmates do not challenge the validity of their convictions and sentences, but rather assert an entitlement to serve the last six months of their sentences on supervised furlough pursuant to § 24-13-720, the action is properly considered in habeas corpus. See id. at 487-88; Graham v. Broglin, 922 F.3d 379, 381 (7th Cir. 1991) (holding that claims seeking "a quantum change in the level of custody" including "freedom subject to the limited reporting and financial constraints of bond or parole or probation" are properly considered in habeas corpus). See generally Lynce v. Mathis, 117 S. Ct. 891, 893 & n.4 (1997) (noting

9

that prisoner contesting the revocation of credits, the award of which entitled the prisoner to release under conditions similar to parole, brought the action as a petition for a writ of habeas corpus and discussing the exhaustion of state remedies). Since the Rooker-Feldman doctrine does not divest us of subject-matter jurisdiction, we must consider the merits of the Inmates' ex post facto challenge to the application of the 1993 amendment to § 24-13-720.

III.

The constitutional provision on which the Inmates rely forbids the States from enacting "any ... ex post facto Law." U.S. Const. art. I, § 10, cl. 1. Generally speaking, the Ex Post Facto Clause prohibits, inter alia, the enactment of "any law `which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1867)). In so doing, it seeks to ensure that individuals receive fair warning of the law and to guard against "arbitrary and potentially vindictive legislation." Id. at 28-29.

A law violates the Ex Post Facto Clause when it is retrospective-- i.e., when it applies to events predating its enactment--and it disadvantages those to whom it applies. See Lynce v. Mathis, 117 S. Ct. 891, 896 (1997). The latter condition is satisfied by any provision "which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission[;] or which deprives one charged with crime of any defense available according to law at the time when the act was committed." Beazell v. Ohio, 269 U.S. 167, 169 (1925). Here, the Inmates maintain that application to them of § 24-13-720 as amended in 1993 would increase the punishment for a crime after its commission by depriving them of a six-month reduction in the sentenced period of incarceration to which they were entitled under the 1983 version of the law. See id. The district court accepted this argument. Whether the 1993 amendment to § 24-13-720 is ex post facto as applied to the Inmates is a question of law that we review de novo. See United States v. Presley, 52 F.3d 64, 67 (4th Cir. 1995).

We begin by noting that there is no question presented regarding the first prong of the ex post facto analysis, i.e., whether the 1993

10

amendment to § 24-13-720 is retrospective as applied to the Inmates. In Plyler, the Supreme Court of South Carolina plainly held that § 24-13-720 as originally enacted entitled all inmates serving sentences of less than life imprisonment to mandatory release on furlough six months prior to the expiration of their sentences. See Plyler, 438 S.E.2d at 246. In reaching this conclusion, the court rejected the State's argument that the 1993 amendment merely clarified the law to make plain that only those inmates who satisfied the criteria of § 24-13-710 were eligible for release on furlough pursuant to § 24-13-720. See id. Instead, the court determined, the 1993 amendment constituted a substantive change in the law. See id. Even if we were to conclude that this holding is incorrect, we are bound by it as a final determination of state law by the highest court of the state. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Thus, there can be no dispute that application to the Inmates of the 1993 amendment is retrospective.

We now turn to the second prong of the ex post facto analysis: Whether application of the amended version of § 24-13-720 to prisoners serving sentences of less than life imprisonment for crimes committed between the enactment of § 24-13-720 in 1983 and its amendment in 1993 would amount to an increase in punishment for crimes previously committed. The State maintains that § 24-13-720 is a furlough program designed to alleviate prison overcrowding and that as such it is not a part of the Inmates' sentences. Therefore, the State claims that the alteration of the program cannot be considered an unconstitutional increase in punishment.

The Supreme Court has recently and emphatically rejected precisely this argument as irrelevant to an ex post facto inquiry. See Lynce, 117 S. Ct. at 896-98. In Lynce, Florida argued that the revocation of early release credits provided pursuant to a program established by the state legislature did not implicate the Ex Post Facto Clause because the program had been created solely for the purpose of alleviating prison overcrowding. The Court rejected this argument, explaining that the purpose of the state legislature was not dispositive of whether the provision violated the Ex Post Facto Clause. See id. Rather, the pertinent issue before the Court was "whether the cancel-

11

lation of 1,860 days of accumulated provisional credits had the effect of lengthening petitioner's period of incarceration." Id. at 896.

Similarly, here, the determination of whether application to the Inmates of the 1993 amendment to § 24-13-720 is ex post facto does not depend on whether the provision is "`in some technical sense part of the sentence.'" Id. at 898 (quoting Weaver, 450 U.S. at 32). Rather, the question is whether application to the Inmates of § 24-13-720 as amended in 1993 will extend the period of their incarceration. See id. at 896; Weaver, 450 U.S. at 33. And, in Lynce the Court expressly held that "retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the Ex Post Facto Clause because such credits are `one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed.'" Lynce, 117 S. Ct. at 898 (emphasis omitted) (alterations in original) (quoting Weaver, 450 U.S. at 32).

The application to the Inmates of the 1993 amendment to § 24-13-720 unquestionably has the effect of increasing the length of their incarceration. Pursuant to the 1983 version of the statute as interpreted by the Supreme Court of South Carolina, the Inmates would be entitled to release from incarceration on furlough six months prior to the expiration of their sentences, assuming the other criteria of the provision are satisfied. Under the statute as amended in 1993, however, prisoners who could not satisfy the additional requirements of § 24-13-710 would not be eligible to participate in the program and would be required to serve the final six months of their sentences in prison. As discussed above, the program established by § 24-13-720 is indistinguishable from parole. Thus, for all practical purposes the application to the Inmates of the 1993 amendment to§ 24-13-720 deprives them of mandatory parole. As desirable as such a result may be--particularly in view of the violent nature of the crimes for which some of these individuals are incarcerated--such a retroactive change in the law is violative of the Ex Post Facto Clause. See Lynce, 117 S. Ct. at 898; Weaver, 450 U.S. at 33-36; Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 663 (1974) (noting that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present [a] serious [ex post facto] question"); Jones v. Murray, 962 F.2d 302, 310 (4th Cir. 1992) (holding that a Virginia

12

statute delaying mandatory release on parole for inmates who refuse to provide a blood sample for DNA testing violates the Ex Post Facto Clause); Fender v. Thompson, 883 F.2d 303, 305-07 (4th Cir. 1989) (declaring a statute that retrospectively eliminated parole eligibility for persons sentenced to life imprisonment who escaped from custody unconstitutional as ex post facto and collecting cases holding that changes in parole eligibility that are both retroactive and unfavorable are violative of the Ex Post Facto Clause). Therefore, we are left with no choice but to affirm the decision of the district court.[9]

IV.

In summary, in 1983 the General Assembly of South Carolina passed a statute that reduced by six months the incarcerative sentence of all inmates serving sentences of less than life imprisonment, including those who had committed violent crimes. It is not for a court to question the wisdom of such a law, for clearly it was within the power of the state legislature to enact. Ten years later, the General Assembly elected to amend that law and to limit the class of inmates who would be entitled to the six-month reduction. We hold that Supreme Court and circuit precedent obligates us to declare the retroactive application of the 1993 amendment to § 24-13-720 to prisoners serving sentences of less than life imprisonment for crimes committed

_____

[9] The State has not argued that the Inmates' ex post facto claim is barred by the new rule doctrine of Teague v. Lane, 489 U.S. 288 (1989), thereby waiving this issue. See Collins v. Youngblood, 497 U.S. 37, 40-41 (1990). In any event, it appears that Teague has no application here because the Inmates do not challenge the validity of their convictions or sentences. See O'Dell v. Netherland, 117 S. Ct. 1969, 1973 (1997) (explaining that the Teague doctrine applies when a state prisoner seeks to overturn his conviction or sentence on federal collateral review); Helton v. Fauver, 930 F.2d 1040, 1047 n.11 (3d Cir. 1991) (concluding that a habeas corpus action challenging as violative of the Ex Post Facto Clause a state court interpretation of a statute setting forth the circumstances under which a juvenile could be tried as an adult "does not implicate the policy favoring the finality of judgments that was at issue in Teague"); cf. Lynce, 117 S. Ct. at 895-98 (granting habeas relief on claim that revocation of credits, the award of which entitled the petitioner to release under conditions similar to parole, violated the Ex Post Facto Clause without addressing Teague).

13

between the enactment of § 24-13-720 in 1983 and its amendment in 1993 unconstitutional as violative of the Ex Post Facto Clause of the United States Constitution. We also hold that under Preiser, an action asserting entitlement to release from physical confinement properly is considered in habeas corpus. We therefore conclude that although in substance this litigation seeks to overturn a decision of the Supreme Court of South Carolina, the Rooker-Feldman doctrine does not operate to deprive us of subject-matter jurisdiction. Accordingly, we affirm.**10**

AFFIRMED

_____

**10** We express no opinion concerning whether the State appropriately may seek reconsideration of the determination of the Supreme Court of South Carolina that the 1993 amendment to § 24-13-720 constituted a substantive change in the law rather than a clarification. See Plyler, 438 S.E.2d at 246. Our review of Plyler, however, indicates that the decision of the state court in this regard may have been influenced by its conclusion that application to the Inmates of the 1993 amendment posed no ex post facto problem because the supervised furlough program was not a part of the Inmates' sentences. See id. at 245 n.1. In view of the recent decision of the Supreme Court in Lynce, this reasoning clearly is no longer tenable. Inasmuch as Lynce undermines--indeed, as explained in the body of this opinion, compels rejection of--the decision of the Supreme Court of South Carolina regarding the ex post facto issue, the conclusion of that court with respect to whether the 1993 amendment to § 24-13-720 was a clarification or a substantive change may also be open to question. This is particularly true in light of the fact that § 24-13-720 was amended during the pendency of litigation concerning the proper interpretation of the provision, supporting the view that the changes effected by the amendment were clarifying rather than substantive. See 1A Norman J. Singer, Statutes & Statutory Construction § 22.31 (5th ed. 1991) (explaining that the existence of a controversy regarding the proper interpretation of a statute prior to its amendment rebuts the presumption that an amendment is substantive in nature).

14